# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| OPS3 LLC, LEE M. FACKLIS, JEFFREY DEAN FACKLIS, and 2201 W. FULTON, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) | No. 13-cv-04398 <br><br> Judge Andrea R. Wood <br><br> On Appeal from the United States Bankruptcy Court for the Northern District of Illinois, Case No. 12-ap-01667 |
| Plaintiffs-Appellants, | | |
| v. | | |
| AMERICAN CHARTERED BANK, | | |
| Defendant-Appellee. | | |

## MEMORANDUM OPINION AND ORDER

OPS3 LLC, Lee Facklis, Jeffrey Facklis, and 2201 W. Fulton, LLC ("Appellants") have brought this appeal from the decision of the bankruptcy court dismissing their adversary complaint. The adversary complaint sought, as relevant here, a declaratory judgment that personal guaranties by Lee Facklis and Jeffrey Facklis (collectively, the "Facklises") had been discharged in bankruptcy, and an injunction preventing American Chartered Bank ("ACB") from enforcing a mortgage executed by the Facklises in favor of ACB to secure loans made to the debtors as it too had been discharged in the bankruptcy. The bankruptcy court dismissed both of those claims in an oral ruling, reasoning that the bankruptcy plan language did not specifically discharge either the personal guaranties or the mortgage. Appellants now contend that the bankruptcy court erred, as the plain meaning of the plan language discharged both the guaranties and the mortgage. For the reasons set forth below, the Court affirms the decision of the bankruptcy court dismissing the adversary complaint.

BACKGROUND

The debtors in the underlying bankruptcy case were four separate business entities: Show Department, Inc.; Resolution Digital Studios ("Resolution"); Boreray, LLC; and 2201 West Fulton, LLC ("Fulton," and collectively with Show Department, Resolution, and Boreray, the "Debtors"). (Adversary Compl. ¶¶ 4–5, Dkt. No. 13-1.) Sometime prior to the bankruptcy, the Facklises—who were two insiders of the Debtors—executed personal guaranties (the "Facklis Guaranties") for each of seven business loans made to the Debtors by ACB. (*Id.* ¶ 20.) Separately, in March 2010, the Facklises executed a second mortgage on certain Wisconsin real estate that they owned personally (the "Wisconsin Mortgage") to secure a loan in the amount of $340,000 made by ACB to Show Department, Boreray, and Resolution. (*Id.* ¶¶ 23–24.)

After each of the Debtors filed voluntary petitions for bankruptcy, the bankruptcy court entered an order allowing the joint administration of the Debtors with *In re Show Department, Inc.*, Case No. 10-bk-42055 (Bankr. N.D. Ill.), as the lead case. (*Id.* ¶ 14.) Each of the Debtors filed a separate Plan of Reorganization, all of which were confirmed on December 15, 2011. (*Id.* ¶¶ 15, 17.) OPS3 LLC was created pursuant to the Plans of Reorganization of Show Department, Resolution, and Boreray, and assumed all assets and liabilities of those three Debtors. (*Id.* ¶¶ 4, 16.) Meanwhile, under its Plan of Reorganization, Fulton continued in existence and retained ownership of the real estate located at 2201 West Fulton in Chicago Illinois, and also provided for the repayment of the mortgage debt on that property owed to ACB. (*Id.* ¶ 18.)

Each of the Plans of Reorganization contained the following provision labeled Section 9.13:

> ***On the latest Effective Date of the four Plans,*** (a) all guaranties of any of the Debtors (Show Department, Inc.; Resolution Digital Studios, LLC; Boreray, LLC; 2201 W. Fulton, LLC) of the payment, performance or collection of any other of the Debtors shall be deemed eliminated and cancelled; ***(b) any obligation of any***

> ***of Debtors and all guaranties by or on behalf of any of the Debtors shall be merged into the obligation of the Debtor as stated in the Plan***; and (c) intercompany Claims between the Debtor entities shall be eliminated.

(*Id.* ¶ 19 (emphasis added).) Each of the confirmed Plans of Show Department, Boreray, and Resolution also contained the following provision at Section 2.01:

> ACB is secured to the extent of the value of its collateral, including accounts receivable, equipment, furniture, general intangibles and chattel papers (all assets), as of the Effective Date of the Plan.

(*Id.* ¶ 38.)

On October 31, 2012, OPS3 and the Facklises filed an adversary complaint against ACB. The action included three counts; however, only Counts I and III are relevant to the appeal. Count I sought a declaratory judgment that the Facklis Guaranties had been "merged" into the obligations of the Debtors, per Section 9.13, and then discharged in bankruptcy. (*Id.* ¶ 27.) Count III sought an injunction preventing ACB from enforcing the Wisconsin Mortgage on the ground that Section 2.01 fails to state specifically that ACB is secured in the Wisconsin Mortgage and therefore that secured debt was discharged in bankruptcy. (*Id.* ¶¶ 38–45.)

ACB filed a motion to dismiss the adversary complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and Federal Rule of Bankruptcy Procedure 7012. After briefing concluded, the bankruptcy court dismissed the action in an oral ruling. (Apr. 25, 2013 Tr. at 7:6–13:12, Dkt. No. 13-2.) With respect to Count I, the bankruptcy court found Appellants' interpretation of Section 9.13 to be overly broad in light of Seventh Circuit precedent indicating that releases of third parties in bankruptcy actions must be narrowly tailored and supported by express findings by the bankruptcy court that such releases are absolutely essential to the reorganization. (*Id.* at 7:6–8:25.) The bankruptcy court also found that the plain language of Section 9.13 did not support the proposition that the Facklis Guaranties had been discharged. The bankruptcy court

3

commented that the relevant language stated that guaranties on behalf of the debtor were "merged" into the debtor and further noted:

> I don't even know what merged means. If you look it up in the dictionary, it says unite. . . . [I]n your next phrase, you say and intercompany claims between the debtor entity shall be eliminated. You really wouldn't have had to use that last sentence. It would be surplusage if your term of merger was correct, that merger not only meant unite, but it eliminated the liabilities.

(*Id.* at 7:6–7:12.). Finally, the bankruptcy court observed that nothing in the disclosure statement suggested that Section 9.13 would operate to discharge the Facklis Guaranties. (*Id.* at 7:13–8:2.)

With respect to Count III, the bankruptcy court cited disclosure statement language indicating that ACB, as a Class I claimant, would "retain a security interest in its collateral to secure their respective allowed secured claims," and concluded that nothing in the disclosure statement provided that the Wisconsin Mortgage would be extinguished. (*Id.* at 9:21–9:23, 9:13–9:25.) The bankruptcy court also noted that, since the Wisconsin property was not property of the estate, there was "nothing operating to discharge" the Wisconsin Mortgage. (*Id.* at 10:23–10:25.) Accordingly, the bankruptcy court dismissed the complaint. (*Id.* at 12:6–12:7.)

## DISCUSSION

This Court reviews the bankruptcy court's dismissal of the Adversary Complaint *de novo*. *Zedan v. Habash*, 529 F.3d 398, 403 (7th Cir. 2008). "A motion under Rule 12(b)(6) [and Federal Rule of Bankruptcy Procedure 7012] tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). The basic pleading requirement is set forth in Federal Rule of Civil Procedure 8(a)(2), which provides that a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

4

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the Adversary Complaint, this Court must "view it in the light most favorable to the plaintiff[s], taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff[s'] favor." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). This Court may affirm the bankruptcy court's dismissal on any grounds supported by the underlying record. *See McCarthy v. Kemper Life Ins. Co.*, 924 F.2d 683, 686 n.1 (7th Cir. 1991). Appellants here challenge the bankruptcy court's dismissal of the Adversary Complaints Counts I and III. The Court considers each in turn.

## I. Discharge of the Facklis Guaranties (Count I)

The focus of Count I is Section 9.13 and, specifically, the clause stating that "all guaranties by or on behalf of any of the Debtors shall be merged into the obligation of the Debtor as stated in the Plan." (Adversary Compl. ¶ 19, Dkt. No. 13-1.) Appellants contend this language means that the Facklis Guaranties were assumed by the Debtors and thus discharged in bankruptcy. ACB disagrees, arguing that the term "merged" is a legal term that has the meaning ascribed to it by Illinois law.

A confirmed plan of reorganization is, in effect, a contract between the parties, and the terms of the plan describe their rights and obligations. *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 755 (7th Cir. 2002) (citing *In re Chicago, Milwaukee, St. Paul and Pac. R.R., Co.*, 891 F.2d 159, 161 (7th Cir. 1989)). Thus, principles of contract law apply when interpreting a plan of reorganization. *In re Airadigm Commc'ns, Inc.*, 616 F.3d 642, 664 (7th Cir. 2010). A court construing a plan of reorganization applies state contract law in determining the meaning of a contested clause. *UNR Indus., Inc. v. Bloomington Factory Workers*, 173 B.R. 149, 157 (N.D. Ill. 1994). Under Illinois law, the proper inquiry is to focus on what the parties to the

5

Debtors' Plans of Reorganization intended the disputed terms to mean. *Id.* (citing *Allen Archery, Inc. v. Precision Shooting Equip., Inc.*, 865 F.2d 896, 899 (7th Cir. 1989)).

Based solely on the language contained in the Debtors' Plans of Reorganization, the Court cannot discern the intent of the parties as to the meaning of the disputed phrase "merged into the obligation of the Debtor."[1] Even if the plain language of Section 9.13(b) purported to release the Facklis Guaranties, however, the releases would not pass muster under applicable Seventh Circuit precedent. Section 524(e) of the Bankruptcy Code provides that, except for circumstances not present here, "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524. "Thus, for example, because of § 524, a creditor can still seek to collect a debt from a co-debtor who did not participate in the reorganization—even if that debt was discharged as to the debtor in the plan." *Airadigm*, 519 F.3d at 656. As a general matter, then, the Facklis Guaranties were not automatically discharged along with the debts incurred by the Debtors themselves.

That said, Section 524(e) of the bankruptcy code does not act as a blanket rule prohibiting a bankruptcy court from releasing non-debtors from liability without the creditor's consent; allowing such relief is within a bankruptcy court's broad equitable powers. *Id.* at 656–57. The proper standard for approval of a release in a plan of reorganization in favor of a non-debtor guarantor is that the provision be appropriately tailored and essential to the reorganization plan as a whole. *See Airadigm*, 519 F.3d at 657; *In re Ingersoll, Inc.*, 562 F.3d 856, 864–65 (7th Cir. 2009). Whether a third-party release is appropriate "is fact intensive and depends on the nature of the reorganization." *Airadigm*, 519 F.3d at 657.

---

[1] The Court is not alone in its incomprehension. In its oral decision dismissing the Adversary Complaint, the bankruptcy court noted, in assessing the applicability of Section 9.13, "I don't even know what merged means." (Apr. 25, 2013 Tr. at 7:3–7:4, Dkt. No. 13-2.)

Any purported release of the Facklis Guaranties would not meet this standard for equitable relief. The nature of the releases in the leading Seventh Circuit cases on this issue—*In re Airadigm Communications, Inc.* and *In re Ingersoll, Inc.*—readily demonstrate that Appellants' reading of Section 9.13 is overly broad. In *Airadigm*, the debtor, a cellular-service provider, had purchased 15 personal communications services license from the Federal Communications Commission ("FCC"), with payment due under an installment plan set up by the FCC. *Airadigm*, 519 F.3d at 644. Three years later, the debtor filed for Chapter 11 bankruptcy and then filed a plan of reorganization that depended on financing by a third party, Telephone and Data Systems ("TDS"). *Id.* at 644–45. The FCC objected to a plan provision that released TDS from "any liability to . . . any holder of any Claim . . . for any act or omission arising out of or in connection" with the bankruptcy case or the plan of reorganization "except for willful misconduct." *Id.* at 655. The FCC argued that the TDS release violated the Bankruptcy Code, but the plan was confirmed over the FCC's objection and the Seventh Circuit affirmed. *Id.* On the facts before it, the Court of Appeals determined that the TDS release "was necessary for the reorganization and appropriately tailored." *Id.* Specifically, the court noted that the release was "narrow," in that it did not provide "blanket immunity" but rather applied only to claims arising out of or in connection with the reorganization and excluded willful misconduct. *Id.* The bankruptcy court also found adequate evidence that TDS required the release before it would provide financing essential to the reorganization. *Id.* In sum, the Seventh Circuit affirmed the third-party release in light of "how narrow the [release was] and how essential TDS was for the reorganization." *Id.* at 657–58.

Similarly, in *Ingersoll*, the Seventh Circuit affirmed the bankruptcy and district courts' determination that a release of the debtor's former owners from claims arising from or relating to

7

two specific cases, including a derivative action on behalf of the debtors, was proper and valid. 562 F.3d at 865. The Seventh Circuit, citing *Airadigm*, agreed with the district court's findings that the release was "narrowly tailored and critical to the plan as a whole." *Id.* at 865. The Seventh Circuit reasoned that the release only covered a narrow set of claims arising from certain causes of action; and that the bankruptcy court had found that this release was "an 'essential component' of the plan, the fruit of 'long-term negotiations' and achieved by the exchange of 'good and valuable consideration' by the [former owners] that 'will enable unsecured creditors to realize distribution in this case." *Id.* The Seventh Circuit further noted that "[i]n most instances, releases like the one here will not pass muster" under the standard first enunciated in *Airadigm*. *Id.*

The circumstances cited by the Seventh Circuit in *Airadigm* and *Ingersoll* are not present in the case presently before this Court. **First**, the purported release set forth in Section 9.13(b) is not "narrow"—under Appellants' interpretation of the relevant language, "all guaranties by or on behalf of any of the Debtors" are extinguished. Indeed, at oral argument before the bankruptcy court, counsel for the Facklises conceded that his reading of Section 9.13(b) would result in a "broad" release of third-party guaranties, and that the release was sufficiently expansive to discharge unidentified guarantors. (Apr. 25, 2013 Tr. at 7:6–7:12, Dkt. No. 13-2.) **Second**, the release here would not be essential to the reorganization. Although the complaint alleges that "[t]he continued participation of [the Facklises] is critical to the success of the Reorganized Debtors" (Adversary Compl. ¶ 29, Dkt. No. 13-1), there is no allegation that the Facklises' participation was induced by the purported release, nor is there an allegation that a release of the Facklis Guaranties is material to the Facklises' ability to contribute to the reorganized company. This is in contrast to the circumstances in *Ingersoll* and *Airadigm*, in which there were factual

8

findings that the releases were necessary in order to foster a successful reorganization. In sum, this is not one of the "rare cases" in which the release of non-debtors should be allowed. *Ingersoll*, 562 F.3d 856, 864–65 (quoting *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 141, 142 (2d Cir. 2005)).

Finally, the Court notes that the bankruptcy court disclaimed the idea that it signed off on the release of the Facklis Guaranties as part of the Debtors' plans of reorganization. (Apr. 25, 2013 Tr. at 5:25–6:2, Dkt. No. 13-2 ("[Not at any time did I think I was entering an order that was releasing the guarantees of the Facklises . . . .").) The Court finds the bankruptcy court's interpretation of its own order to be persuasive. *See, e.g.*, *Matter of Webber*, 25 F.3d 413, 416 (7th Cir. 1994) (stating bankruptcy court's interpretation of a confirmed plan is entitled to deference); *Schwinn Cycling & Fitness Inc. v. Benonis*, 217 B.R.790, 795 (N.D. Ill. 1997) (stating bankruptcy court's "reading of its own order . . . is entitled to respect") (quoting *Matter of Xonics, Inc.*, 813 F.2d 127, 130 (7th Cir. 1987)). Accordingly, the bankruptcy court's dismissal of Count I is affirmed.

## II. Injunction Preventing Enforcement of Wisconsin Mortgage (Count III)

The Wisconsin Mortgage was executed on behalf of the Facklises in favor of ACB. Even though the Facklises were not parties to the jointly administered bankruptcy case that confirmed the relevant plans of reorganization, Appellants allege that "[t]he Wisconsin Mortgage is a prepetition and preconfirmation security document which has been extinguished by" the plans of the Debtors. (Adversary Compl. ¶ 40, Dkt. No. 13-1.)

Appellants do not point to any language in the confirmed plans that explicitly extinguishes the Wisconsin Mortgage. Instead, Appellants contend that Section 2.01, which grants ACB a security interest in its collateral, excludes the Wisconsin property as collateral for

9

debts of the reorganized Debtors, and thus any interest ACB had in that property was discharged. That argument is unpersuasive. The relevant plan language reads: "ACB is secured to the extent of the value of its collateral, ***including*** accounts receivable, equipment, furniture, general intangibles and chattel papers (all assets), as of the Effective Date of the Plan." (Adversary Compl. ¶ 38, Dkt. No. 13-1 (emphasis added).) The word "including" in this context does not serve to limit the collateral to the items that are expressly enumerated. *See* 11 U.S.C. § 102(3) (stating that the words "'includes' and 'including' are not limiting . . . ."). Accordingly, the fact that the Wisconsin Mortgage is not explicitly set forth in Section 2.01 does not have any effect on its continued existence as collateral in which ACB has a security interest. Thus, because the plain language of Debtors' plans cited by Appellants fails to support their argument that the Debtors' Plans released the Wisconsin Mortgage via negative implication, the Court affirms the judgment of the bankruptcy court on Count III.

## CONCLUSION

For the foregoing reasons, the Court affirms the bankruptcy court's dismissal of the Adversary Complaint. The Clerk of Court is directed to enter Judgment in favor of the Appellees.

ENTERED:

Dated: August 1, 2017

Andrea R. Wood
United States District Judge